IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MICHAEL LANDRY | CRIMINAL ACTION NO. <br> 4:18-CR-0028-HLM-WEJ |

**Government's Opposition to Defendant's
Motion for Compassionate Release**

The United States of America, by Byung J. Pak, United States Attorney, and Diane C. Schulman, Special Assistant United States Attorney, for the Northern District of Georgia, file this response in opposition to Defendant Michael Landry's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). As explained herein, the factors set forth in § 3553 clearly militate against a sentence reduction for Defendant.

**Background**

**1. Procedural history**

On March 12, 2018, an agent with the National Park Service, posted a fictitious Craig's List ad in which he stated that he and his step-son were looking for "like-minded people" to have "family fun."(PSR ¶ 8.) Two days later, on March 14, 2018, Defendant, using a fake identity, responded via email, and said he would "love to be part of the family – let's have fun." (*Id.* ¶ 9.) In his response, he included 3 pictures, one his himself partially dressed and two of his penis. (*Id.*)

The agent responded and told him that his 13-year-old stepson "Jake" would engage in sex acts with Defendant. (*Id.* ¶ 10.) Defendant responded "when can

we meet?" and asked some questions about what specific sex acts "Jake" enjoyed. (*Id.*) Defendant agreed to meet "Jake" on March 19, 2019 at 2:00 pm at the Chickamuagua & Chattanooga Visitor Center, a national park. (*Id.* ¶ 11.) He said he would bring condoms, lubricant and a tent. (*Id.*) He arrived at the appointed time, ready to have "fun," and was immediately arrested. (*Id.* ¶ 12.) A search of his vehicle found a tent, tent poles, a backpack with condoms, 6-7 sex toys, and lubricant. (*Id.*)

In November 2018, Defendant was charged in a two-count indictment of violating 18 U.S.C. §§ 2422(b), and 2423(b), (f)(1). (Doc. 1). Title 18 U.S.C. § 2422(b) carries a mandatory maximum penalty of ten years. On or about January 18, 2019, Defendant pled guilty to count two of the indictment; the count charging a violation of 18 U.S.C. § 2423(b), (f)(1). (Doc. 17). The Government agreed to allow Defendant to plead guilty to 18 U.S.C. 2423(b), (f)(1), and thereby avoid the ten mandatory sentence required by 18 U.S.C. § 2422(b). In exchange, Defendant agreed to a binding plea requiring him to serve a 60-month sentence. (Doc. 18).

On April 12, 2019, Defendant was sentenced to 60 months incarceration. The Government allowed Defendant to voluntarily surrender. (Doc. 17). On May 23, 2019, Defendant began serving his 60 month sentence. On July 28, 2020, Defendant submitted a request for a reduction in sentence based on his concerns about anxiety and depression and COVID-19. (*See* Def's Ex. F.) On August 12, 2020, his request was denied. (*See* Def.'s Ex. F). On August 21, 2020, Defendant filed his motion for compassionate release with this Court. (Doc. 29).

2. **Government's response to the COVID-19 pandemic**

The Department of Justice has taken many steps to protect the health and safety of federal inmates during this pandemic. On March 26, the Attorney General directed the Bureau of Prisons ("BOP") to "prioritize the use of [its] statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." Memorandum from the Attorney General, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), *available at* https://www.justice.gov/file/1262731/download. Inmates are more likely to be granted home confinement when the CDC risk factors indicate their greater vulnerability to COVID-19. *Id.* at 1-2. On April 3, the Attorney General issued a follow-on memorandum that instructed BOP to prioritize review of home confinement applications of inmates at institutions where there have been COVID-19 outbreaks. Memorandum from the Attorney General, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

BOP is devoting all available resources to implement this directive. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General for home confinement. Additionally, while no request is necessary, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager. *Id.* These and other efforts by BOP to combat the coronavirus, as well as up-to-date infection data, are detailed at the following webpage: https://www.bop.gov/coronavirus.

Moreover, BOP has taken significant measures to protect the health of the inmates in its charge:

   a. All inmates in every BOP institution are secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities, with exceptions for medical treatment and similar exigencies.

   b. All staff and inmates have been and will continue to be issued an appropriate face covering and strongly encouraged to wear the face covering when in public areas when social distancing cannot be achieved.

   c. Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission and at medical centers, all staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

   d. Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are

suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

e.  Social and legal visits were stopped as of March 13, 2020, and remain suspended to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols in place for prison staff, contractors, and visitors.

## Discussion

Under 18 U.S.C. § 3582(c)(1)(A)(i), the district court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Pursuant to statutory authority, the Sentencing Commission issued a policy statement at § 1B1.13 to govern compassionate release. That statement requires additionally that the court find "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Even if the defendant establishes "extraordinary and compelling reasons," § 3582 leaves it to the district court's discretion whether to reduce the sentence. The court must consider the § 3553(a) factors to determine if any reduction would be appropriate. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

On each point, the inmate bears the burden of proof. *See, e.g.*, *United States v. Rodriguez-Orejuela*, No. 03-CR-20774, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) ("In seeking a reduced sentence under this framework, the defendant 'bears the burden of establishing that compassionate release is warranted.'").

Defendant alleges that his anxiety and depression, age, and obesity are an extraordinary and compelling reason that justifies his release.  The Government notes that anxiety and depression are not increased risk factors for COVID-19, and therefore do not pose an extraordinary and compelling reason to justify release.  The Government also notes that Defendant's prison medical records do show any other significant health problems.  However, according to the CDC, Defendant is "at increased risk of severe illness from COVID-19" due to his obesity (BMI of 34.6). https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 14, 2020). Thus, the government agrees that, with respect to him, the COVID-19 pandemic constitutes an extraordinary and compelling reason under § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13 app. note 1(A)(ii)(I). Nonetheless, this Court should deny Defendant's motion for compassionate release because he would pose a threat to the safety of the community if released, and reducing his sentence to time served contravenes the § 3553(a) factors.

## I. Defendant would pose a threat if released.

To qualify for compassionate release, the inmate must prove that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). A defendant may pose a danger to the community not only through "physical violence" but also if he "might engage in

criminal activity to the detriment of the community." *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988) (quoting legislative history of the Bail Reform Act for proposition that "dangerousness" and "safety" are broad terms that contemplate criminal activity beyond "physical violence").

Defendant was convicted of enticing a minor to engage in sexual activity. He attempted to molest a fictional 13-year-old boy by coordinating with his step-father. Moreover, he sent graphic, naked pictures of himself to the "step-father" and asked about specific sex acts that the child would agree to engage in with him. Defendant clearly has a sexual attraction to children, and he would pose a danger to the community if released. *See e.g. United States v. Mortensen*, 2020 WL 2549970, at *2 (D. Nev. 2020) (denying compassionate release because "[t]he predatory nature of the his conduct by a man in his late fifties cannot be overlooked and suggests that he remains a danger to the community…"). Indeed, the Supreme Court has remarked on "the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 538 U.S. 84, 103 (2003). In this case, Defendant engaged in criminal conduct that was clearly a detriment to the community. Defendant's conduct victimized children, our most vulnerable members of society. In fact, Defendant's conduct was so dangerous to society that he was charged with a statute that included a ten year mandatory minimum sentence.

II. **Section 3553(a) factors**

Defendant has served approximately 16 months of a 60 month sentence. By pleading guilty to Count Two of the indictment and agreeing to a binding plea recommending 60 months, Defendant avoided the ten year mandatory minimum

sentence that Count One carried. It is important to understand that Congress chose to impose a severe punishment on child predators, even those without any prior criminal history, in order to protect some of society's most vulnerable victims. Reducing Defendant's sentence to time served would fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). Moreover, general deterrence would be weakened if Defendant escapes punishment after only 16 months in prison. *Id*. § 3553(a)(2)(B). These offenses take place on the internet, where predators often have direct contact with their victims, and where anonymity often prevents detection and prosecution. Congress imposed a ten-year mandatory minimum to strongly deter such acts. Finally, specific deterrence of Defendant is necessary for the reasons described above. *Id*. § 3553(a)(2)(C).

## Conclusion

The United States respectfully requests that the Court deny Landry's motion for compassionate release. However, if the Court intends to grant the motion, the government requests a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*


/s/Diane C. Schulman
*Special Assistant United States Attorney*
Georgia Bar No. 497764

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000; fax (404) 581-6181

## **CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that this document was prepared using Book Antiqua 13 point font, and that I have caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system. Additionally, a copy of this document has been mailed to the following address:

This 29th of September 2020.

/s/Diane C. Schulman
*Special Assistant U.S. Attorney*